In The
Court of Appeals
For The
First District of Texas
____________
NO. 01-01-00666-CR
____________

MARK A. BASDEN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 278th District Court
Walker County, Texas
Trial Court Cause No. 20,768-C




O P I N I O N
           Appellant was charged by indictment with possession of a deadly weapon in a penal
institution. Appellant pled not guilty. A jury found appellant guilty and assessed punishment
at 10 years in prison and a $250 fine. 
 
BACKGROUND
           Appellant was in prison at the Estelle High Security Unit in Walker County, Texas. 
Appellant was housed in cell number 127 in the H-wing. 
           Lieutenant Butcher, a shift supervisor, gave Sergeant Cleveland an anonymous I-60
form that alleged that the prisoner in H-wing, cell 127, had a homemade knife in his cell.


 
While appellant was outside exercising, Sergeants Cleveland and Sutton entered and
searched appellant’s cell. When Sergeant Sutton picked up appellant’s bible from his bunk,
a metal “shank” fell from its binding. Sergeant Sutton filled out a chain-of-evidence form
and turned the alleged weapon over to internal affairs. 
                                                           DISCUSSION
           In his first point of error, appellant argues that the evidence was legally and factually
insufficient to establish that the metal object found in his cell was a deadly weapon. 
Standard of Review
           In reviewing the evidence on legal sufficiency grounds, we view the evidence in the
light most favorable to the prosecution to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In reviewing the evidence on factual
sufficiency grounds, all of the evidence as a whole must be reviewed, and not only in the
light most favorable to the prosecution. Clewis v.State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996). After review, the evidence will not be deemed factually insufficient unless (1)
it is so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against
the great weight and preponderance of the available evidence. Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000). However, in a factual sufficiency review, the appellate court
should not substitute its own judgment for that of the fact finder. Jones v. State, 944 S.W.2d
642, 648 (Tex. Crim. App. 1996). Under both legal and factual sufficiency, the jury is the
exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the
witnesses’ testimony. Penegraph v. State, 623 S.W.2d 341, 343 (Tex Crim. App. 1981).
Deadly Weapon
           “Deadly weapon" is defined as follows:
(A) a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury; or
 
(B) anything that in the manner of its use or intended use is capable of causing death
or serious bodily injury. 
 
 Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon 1994). 
           An object that has an obvious purpose apart from causing death or serious bodily
injury cannot be a deadly weapon under subsection (A) because the object must be
“manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily
injury.” McCain v. State, 22 S.W.3d 497, 502, (Tex Crim. App. 2000); Thomas v. State, 821
S.W.2d 616, 620 (Tex. Crim. App.1991). The State has conceded in its brief that the
evidence is legally and factually insufficient under 1.07(a)(17)(B), and, therefore, we will
consider the sufficiency of the evidence only under section 1.07(a)(17)(A).
 
Evidence favorable to the verdict
           The State presented testimony from Sergeants Cleveland and Sutton. Sergeant
Cleveland testified that, during his nine years as a correctional officer, he had found around
50 to 60 shanks. Cleveland described a shank as any type of metal object that was not in its
original shape, form or fashion. Cleveland also testified that he had been stabbed by such
objects before. In his opinion, the metal object he found in appellant’s cell was, in fact, a
deadly weapon because it was something that in the manner of its use or intended use was
capable of causing serious bodily injury or death, or it was something that had been made or
adapted to be capable of causing serous bodily injury or death. He also stated that the metal
shank found in appellant’s cell could be used to stab somebody in the head or the neck.
           Sergeant Sutton testified that he had been a correctional officer for 13 years. He
stated that, in his opinion, the metal shank was a deadly weapon for the same reasons given
by Sergeant Cleveland. Sergeant Sutton testified, based on his experience in the prison, that
it was common to find weapons like the metal shank in prisoners’ cells. In addition, Sergeant
Sutton testified that, even though the shank was dull as a butter knife, it could still be used
as a weapon. 
           Walter Knight, an investigator from the office of the Inspector General, also testified
for the State. Knight testified that, as soon as he saw the metal shank found in appellant’s
cell, he believed it was a deadly weapon. His belief was based on the way the piece of metal
had been sharpened and changed to look like a knife.
 
Evidence unfavorable to the verdict
           Howard Milstead, an inmate, testified for the defense. Milstead stated that, during his
time in prison, he had made approximately 30 to 50 weapons, and, in his opinion, the metal
shank was not a deadly weapon because it was too light, too dull, and too short. Milstead
further stated that the metal shank was used to dig holes in concrete, specifically in the prison
cell, so that inmates could communicate through the holes in the wall.
Analysis
           Appellant presented one witness at trial, a fellow inmate, who stated that he believed
the metal shank was not a deadly weapon and was made for other purposes. Under both legal
and factual sufficiency, the jury is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given to the witnesses’ testimony. Penegraph v. State, 623
S.W.2d 341, 343 (Tex Crim. App. 1981). We find that, when viewing evidence in the light
most favorable to the prosecution, a rational trier of fact could have found beyond a
reasonable doubt that the metal shank was something manifestly designed, made, or adapted
for the purpose of inflicting death or serious bodily injury. See King v. State, 29 S.W.3d at
562. We also find that, after reviewing all of the evidence, the evidence was not so weak as
to be clearly wrong and manifestly unjust, nor was the adverse finding against the great
weight and preponderance of the available evidence. See Johnson, 23 S.W.3d at 11. 
Accordingly, we overrule appellant’s first point of error. 
 
 
Habitual offender
           In his second point of error, appellant argues that the trial court erred in denying his
request for an instruction in the charge that would have allowed the jury to sentence him as
a habitual offender pursuant to section 12.42(d) of the Texas Penal Code. 
           Appellant was charged by indictment with possession of a deadly weapon in a penal
institution, a third degree felony. The indictment contained one enhancement paragraph. 
Appellant pled true to the enhancement paragraph. Accordingly, appellant was subject to
being punished pursuant to section 12.42(a)(3) of the Texas Penal Code. Under section
12.42 (a)(3), appellant was subject to being punished for a second degree felony by a term
of imprisonment for 2 to 20 years and/or a fine not to exceed $10,000. Tex. Pen. Code Ann.
§ 12.42(a)(3) (Vernon Supp. 2002). During the punishment phase, the State presented
evidence of five prior convictions. 
           Appellant requested that the jury charge include an instruction that he be punished
pursuant to section 12.42(d). Under section 12.42 (d), appellant would be subject to 25 to
99 years or life imprisonment and no fine. Tex. Pen. Code Ann. § 12.42 (d) (Vernon Supp.
2002).
           The State objected to appellant’s requested jury instruction on the grounds that
appellant had not been charged as a habitual offender in the indictment and it was the State’s
intention to indict him as it did so that it could seek a fine. Appellant was already serving
a life sentence, and therefore the State felt another life sentence would not be an adequate
punishment.
           Appellant’s requested jury instruction expanded the allegations in the indictment and
was therefore, improper. The defendant in a criminal case does not have the right to choose
his charge. See Roise v. State, 7 S.W.3d 225, 243 (Tex. App.—Austin 1999, pet. denied)
(citing Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 668 (holding that, so long 
as the prosecutor has probable cause to believe that the accused committed an offense
defined by statute, the decision whether to prosecute, and what charge to file or bring before
a grand jury, generally rests in the prosecutor’s discretion)). Further, a defendant cannot be
convicted or punished for something with which he is not charged.


 A trial court’s decision
to submit a jury instruction is measured by an abuse of discretion standard. See Wesbrook
v. State, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). We find that the trial court did not
abuse its discretion in denying appellant’s jury instruction. Accordingly, we overrule
appellant’s second point of error.
Seizure of funds
           In his third point of error, appellant argues that the trial court erred in prematurely
entering an order for the seizure of assets from appellant’s inmate trust fund. Specifically,
appellant contends that the fine should not have been collected until his sentence began to
run.
           In accordance with the jury verdict, the court imposed a sentence of 10 years in prison
and a $250 fine. The court further ordered that “the judgment and sentence in this cause shall
begin to run from and after the sentence in Cause No. 12749 . . . has ceased to operate.” 
After the sentence was imposed, the State requested seizure of appellant’s inmate trust fund
assets to pay the fine and court costs of this case, pursuant to section 501.014 of the Texas
Government Code. The court granted the State’s request and issued such an order. Section
501.014 provides in pertinent part,
(e) On notification by a court, the department shall withdraw from an inmate’s
account any amount the inmate is ordered to pay by order of the court under
this subsection. The department shall make a payment under this subsection
as ordered by the court to either the court or the party specified in the court
order. The department is not liable for withdrawing or failing to withdraw
money or making payments or failing to make payments under this subsection. 
The department shall make withdrawals and payments from an inmate’s
account under this subsection according to the following schedule of priorities:
(1) as payment in full for all orders for child support;
                      (2) as payment in full for all orders for restitution;
(3) as payment in full for all orders for reimbursement of the Texas
Department of Human Services for financial assistance provided for the child's
health needs under Chapter 31, Human Resources Code, to a child of the
inmate;

                      (4) as payment in full for all orders for court fees and costs;
                      (5) as payment in full for all orders for fines; and
                      (6) as payment in full for any other court order, judgment, or writ.
Tex. Gov’t Code Ann. § 501.014(e) (Vernon Supp. 2002). 
           Appellant concedes that the plain language of the section indicates that the hold on
the inmate’s trust fund should be placed “upon receipt of the court’s order.” Appellant does
not cite any authority to support his claim that the funds should have been seized at the same
time his prison sentence began. We hold that the court’s order was valid pursuant to section
501.014 and, therefore, we overrule appellant’s third point of error.


 
           We affirm.
 
                                                                             Sam Nuchia
                                                                             Justice

Panel consists of Justices Nuchia, Radack, and Price.



Do not publish. Tex. R. App. P. 47.